H. W. MIDDLETON v. THE STATE.

No. 12701. Delivered March 5, 1930.
Reported in 25 S. W. (2d) 614.

The opinion states the case.

*Cofer & Cofer* of Austin, and *Alexander & Alexander* of Smith-ville, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment confinement in the penitentiary for ninety-nine years.

The indictment charged that appellant "did then and there unlawfully and voluntarily and with malice aforethought kill J. J. Middleton by poisoning him with strychnine." The motion to quash the indictment was predicated upon several grounds. It was averred that the offense was not set forth in plain and intelligible words and that by reason thereof appellant was not able to properly prepare for trial. We quote one of the exceptions as follows: "Because said indictment is fatally defective in that it fails to allege and charge the manner in which said defendant is supposed to have poisoned and killed J. J. Middleton; that said indictment is under the general murder statute; that there is a special statute dividing said crime into two methods, one for administering the poison itself to deceased and the other by placing said poison in reach of the person taking. There is another division of this offense which is by placing poison in springs or other places for the purpose of poisoning human beings, and that said indictment fails to allege what method was used by defendant."

Art. 1197, Penal Code, provides:

"Whoever shall mingle or cause to be mingled any noxious potion or substance with any drink, food or medicine, with intent to kill or to injure any other person, or shall wilfully poison or cause to be poisoned any spring, well, cistern or reservoir of water with such intent, shall be confined in the penitentiary not less than two nor more than ten years."

Art. 1198, Penal Code, reads as follows:

"Whoever with intent to injure shall cause any person to inhale or swallow any substance injurious to health or any function of the body, or administer such substance with intent to kill, shall be confined in the penitentiary not less than two nor more than five years."

Art. 1199, Penal Code, provides:

"If by reason of the commission of any offense named in the two preceding articles the death of a person be caused within one year, the offender shall be deemed guilty of murder."

The articles above quoted set forth several ways by which the offense of murder by poisoning may be committed. For example, under Art. 1197, supra, the offense may be committed by mingling the poison with food, drink or medicine, or by poisoning or causing to be poisoned a spring, well, cistern or reservoir of water. Under

Art. 1198, supra, the offense may be committed by causing another to inhale or swallow poison, or by administering poison to another. The indictment fails to particularize the acts complained of. It merely charges in general terms that appellant committed the offense of murder by poisoning the deceased with strychnine. Whether the strychnine was administered by appellant to deceased, or whether appellant was charged with mingling such poison with the drink, food or medicine is not averred. As far as the allegations of the indictment are concerned, the manner in which appellant poisoned deceased is a matter of conjecture.

Art. 1, Section 10 of the Constitution provides:

"In all criminal prosecutions the accused shall have . . . the right to demand the nature and cause of the accusation against him, and to have a copy thereof; . . . and no person shall be held to answer for a criminal offense, unless on indictment of a grand jury."

Our statute provides that the offense shall be set forth in plain and intelligible words. Art. 396, C. C. P. Further it is provided by statute that everything shall be stated in the indictment which it is necessary to prove. Art. 397, C. C. P. At the time the Bill of Rights was adopted the word "indictment" had a well-defined meaning. The essential acts or omissions which constituted the offense were required to be stated in the indictment. Under our decisions all that is essential to constitute the offense must be explicitly charged and cannot be aided by intendment. The facts constituting the offense must be set forth so that the conclusions of law may be arrived at from the facts so stated. Ford v. State, 2 S. W. (2d) 265; Rodriguez v. State, 12 Tex. Cr. App. 552; Hewett v. State, 25 Tex. 722. We quote from Ford v. State, supra, as follows:

"Nine requisites of an indictment are set out in the statute, Art. 396, C. C. P. 1925. The seventh item reads thus: 'The offense must be set forth in plain and intelligible words.' This means more than that the accused must be charged in general terms with the commission of some crime. The indictment must particularize the acts or omissions complained of so that the identity cannot be mistaken. Alexander v. State, 27 Tex. Cr. App. 95, 10 S. W. 764. The elements of the offense should be so averred as to apprise the accused of the charge against him and to enable him to plead a judgment in bar of another prosecution for the same act. Jennings v. State, 88 Tex. Cr. R. 639, 229 S. W. 925. The law does not require minuteness of detail, but demands only that the particular offense be set out with such certainty that a presumptively innocent man seeking to know

what he must meet may ascertain fully therefrom the matters charged against him. Harden v. State, 85 Tex. Cr. R. 220, 211 S. W. 233, 4 A. L. R. 1308; Stanford v. State, 99 Tex. Cr. R. 111, 268 S. W. 161. Generally speaking it is sufficient to describe the offense as it is described in the statute. Burch v. The Republic, 1 Texas 608; Michie's Ency. Digest of Texas Laws, Vol. 4, page 311, and precedents collated. To this rule, however, there are many exceptions. Todd v. State, 89 Tex. Cr. R. 99, 229 S. W. 515; Branch's Annotated Texas Penal Code, Section 499, and cases collated. If the language of the statute is itself completely descriptive of the offense, the indictment will be sufficient if it follows the statute. McFain v. State, 41 Texas 385, and other cases collated in Branch's Annotated Texas Penal Code, Section 494."

Was appellant charged with administering the poison to the deceased? The indictment fails to answer the question. Was he charged with mingling the poison with the food, etc. of deceased? Again the indictment fails to answer the question. The acts of appellant are not particularized in the indictment. The information derived from reading the indictment would not have enabled appellant,—if innocent,—to prepare for trial. We are of the opinion that the motion to quash should have been sustained.

If the indictment should be considered sufficiently definite in its averments to charge that appellant administered poison to deceased, as the state contends, the evidence fails to support such allegation. The proof on the part of the state was to the effect that appellant mixed strychnine with quinine and left it in the home of deceased; that deceased met appellant in town and told him he was not feeling well; that appellant told deceased to go home and take a dose of quinine; that deceased took quinine from the bottle in which the strychnine had been placed; that appellant was not present at the time deceased took the strychnine. This proof might have justified a conviction under the provisions of Art. 1197, supra, and 1199, supra, wherein the mingling of poison with drink, food or medicine with intent to kill or injure another, and which results in his death, is defined as murder. In Brooks v. State, 60 S. W. 53, it was charged in the indictment that the appellant killed the deceased by mingling and causing to be mingled certain poison, naming it, with beer, with the intent to injure and kill the deceased, well knowing that the deceased would drink said poisoned beer, and that the deceased did drink said poisoned beer, which caused his death. In the charge the jury were authorized to convict if they believed appellant gave the

poison mixed with beer or caused deceased to swallow it. In condemning the charge, Judge Davidson said:

"Appellant was indicted under Arts. 647 (now 1197) and 649 (now 1199) of the Penal Code. The charge would have justified a conviction without reference to these articles or the allegations contained in the indictment. Under the charge given, it was not necessary to his conviction that appellant should have mingled the poison with the beer. It was only necessary that he should have given deceased the poisoned drink. Had appellant given the poisoned beer, and the party died therefrom, he would have been guilty of murder though he had not mingled the poison with the beer, under this instruction."

If in that case the charge complained of was erroneous, it would follow, we think, that proof that poison was mingled with medicine and left where deceased would take it would not support an allegation that appellant administered the poison to deceased.

The state's testimony was, in substance, as follows: Deceased was the father of appellant. Appellant and deceased were partners in business. Appellant had been having illicit relations with Mrs. Rosa Waybourne. Deceased had upbraided his son on various occasions for permitting Mrs. Waybourne to break up the home of appellant. Shortly before his death, deceased went from his home to the home of appellant's first wife and told her he was ill. He said that he had taken some medicine. In a short while he had convulsions. A doctor was summoned and upon the trial he testified that strychnine would produce convulsions. The bottle from which it was thought deceased had taken the medicine was brought from deceased's house and placed on a table in the home of appellant's first wife. Appellant, being summoned, came to the bedside of his father. He saw the bottles on the table, placed them in his pocket and took them to his office, where he hid them. Several weeks after the death of deceased his body was exhumed and an analysis of the contents of the stomach made. The chemist testified that he found traces of strychnine in the stomach. He failed to testify as to the quantity of strychnine found. The undertaker who embalmed the body of deceased testified that in his opinion deceased died from either strychnine or morphine poisoning. The doctor who waited upon deceased also testified that, in his opinion, deceased died of poisoning. Mrs. Waybourne testified that appellant told her that he had poisoned his father. She said that in his statement, appellant said that he placed some strychnine in a bottle of quinine and left it in the home of

deceased; that deceased had told him downtown that he felt bad; that he told deceased that he had better go home and take a dose of quinine; that later he (appellant) got the bottles he had left in the home of deceased and hid them in his house.

The testimony of appellant's witnesses, as well as some of those of the state, was to the effect that deceased's wife had died two or three years prior to the death of deceased; that deceased had grieved over the death of his wife and had expressed the desire to be with her; that he often went to the cemetery, cried and talked to her grave; that he said it would only be a little while until he would be with her. Appellant's testimony showed that deceased kept numerous bottles of medicine at home, all of which had been destroyed after the death of deceased; and that deceased had become very morose prior to his death. Appellant denied that he had poisoned his father and denied that he had told Mrs. Waybourne that he had placed strychnine within his father's reach. His proof was to the effect that Mrs. Waybourne had been convicted of killing her husband and that it was largely upon his testimony that the conviction had been obtained. At the time of appellant's trial, Mrs. Waybourne was in jail, pending an appeal from her conviction.

We are unable to say that the evidence is insufficient to establish the corpus delicti. It is observed, however, that the proof relative to such matter is not as full as it might have been. The quantity of strychnine found in deceased's stomach was not disclosed. The amount of strychnine required to produce death when taken into the human stomach was not given. In the event of another trial it would seem that evidence touching these matters might be supplied.

If the appellant's theory that deceased committed suicide, or by accident or mistake took poison he already had in his house and which appellant had nothing to do with placing there, be given support in the testimony on another trial, such defensive theories should be affirmatively submitted in the charge of the court.

The judgment is reversed and the prosecution ordered dismissed.

*Reversed and prosecution ordered dismissed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.