J. C. RAYMOND v. THE STATE.

No. 13029. Delivered October 8, 1930.
Rehearing denied December 10, 1930.
Reported in 33 S. W. (2d) 192.

The opinion states the case.

*Murchison & Davis* of Haskell, *F. L. Kuykendall* and *Bouldin & Bouldin,* all of Albany, and *McLean, Scott & Sayers* of Fort Worth, for appellant.

*A. A. Dawson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is swindling, a felony; the punishment, confinement in the penitentiary for two years.

According to the version of the state, appellant, Emmett A. Jones, Geo. Stribling, Jr. and G. C. Butler represented to John H. Sedwick, W. R. Nail, W. G. Webb, John F. Sedwick, Thos. L. Blanton, Jr., and W. Graham Webb, Jr. that General Neon Sign Corporation was duly incorporated under the laws of the State of Texas with a manufacturing business and plant in Fort Worth, Texas; that the corporation had a capital stock of $100,000 fully subscribed and paid in, Guy Waggoner having $20,000 of the stock; that Emmett A. Jones was president of the corporation and

H. F. Stribling was secretary; that said corporation owned a patent on a certain Neon gas bulb of great value that in no way infringed on any other patent; that the plant of the corporation was the only one of its kind in the State of Texas; that the president, Emmett A. Jones, had legal authority to execute binding contracts for said corporation. The testimony of the state was to the effect that these representations were false and fraudulent, it being shown for example that the company was not incorporated, did not have $100,000 in paid up capital stock, and did not have a patent on the Neon gas bulb. Moreover, Guy Waggoner did not own $20,000 of stock in the company. Further, the testimony of the state was to the effect that the representations made by appellant and his associates were for the purpose of securing $9,750 from the injured parties for the exclusive right to sell Neon signs in all of the counties of the State of Texas, except twenty-five. The injured parties testified that they relied upon the representations, and delivered to appellant and his associates $9,750. Upon the delivery of the amount mentioned, Emmett A. Jones, as president of the corporation, entered into a contract with said parties whereby they were granted the exclusive right to sell Neon signs in Texas. In accepting the testimony of the state, the jury were warranted in concluding that the injured parties were swindled.

Testifying in his own behalf, appellant denied that the representations were made to the injured parties in his presence, and declared that he had no knowledge that any of his associates had ever made such representations.

The legal questions involved do not require a more detailed statement of the testimony.

Three principal grounds for quashing the indictment were set forth in appellant's motion. In the first place it is urged that the indictment fails to allege the value of the property claimed to have been obtained by virtue of the false pretenses. An examination of the indictment discloses that it is averred that the injured parties were induced by the pretenses therein set forth and alleged to be false to "part with $9,750 and intended to part with the title and possession of said money, and did so part with same." Money, in our statute, has a distinctive meaning significant of value. The averment that the injured parties parted with the title and possession of $9,750 in money was sufficient to apprise appellant of the value of the property obtained by virtue of the alleged fraudulent representations. Speer v. State, 97 S. W. 469.

In the second place it is contended that the indictment fails to negative by special averment the truth of the pretenses. Touching the representations made by appellant and his associates, the indictment alleges that said parties "did then and there to said John H. Sedwick, W. R. Nail, W. G. Webb, John F. Sedwick, Thos. L. Blanton, Jr. and Graham Webb, Jr. falsely and fraudulently represent: that 'General Neon Sign Corporation' was then and there a corporation duly incorporated under the laws of the State of Texas; that the Neon gas sign manufacturing business was the place and office of the said corporation situated at Fort Worth, Texas at No. 3500 Cleburne Road; that said Emmett A. Jones was the president and that H. F. Stribling was the secretary-treasurer of the said corporation; that said corporation was incorporated for $100,000 capital stock, and that all of same was subscribed for and paid in cash; that Guy Waggoner owned $20,000 of stock in said corporation; that said corporation at that time owned a patent on a certain Neon gas bulb of great value that in no way infringed on any other patent; that the plant of said corporation was the only one of its kind in the State of Texas; that said Emmett A. Jones, as president, had legal authority to execute binding contracts for said corporation; that if said John H. Sedwick, W. R. Nail, W. G. Webb, John F. Sedwick, Thos. L. Blanton, Jr. and W. Graham Webb, Jr. would pay to said General Neon Sign Corporation $1,625 each, or the sum of $9,750 that such corporation by written contract would grant to said parties paying said money, and others associated with them, the exclusive right to sell in the State of Texas, except in 25 counties named, all Neon signs and Neon products, including said Neon gas bulb manufactured by said corporation; that said G. C. Butler would associate himself and one of his friends with said parties paying said money in said contract; that the said G. C. Butler would at the same time pay to the said corporation the sum of $3,250 and that the said corporation would accept said $9,750 and the said $3,250 and also the sum of $2,000 which had theretofore been paid to said General Neon Sign Corporation by Thos. L. Blanton, Jr., and others aggregating in all $15,000 as a deposit in evidence of good faith, and that said corporation would accept said $15,000 as an advance payment by said parties purchasing said sales rights and return to them by way of credits to the extent of five percent on all gross sales of Neon products." Following the foregoing averment it was alleged that all of said representations were false and fraudulent, and that appel-

lant and his associates knew them to be false and fraudulent at the time they made them.

We understand it to be the general rule that an averment that the pretenses were false is sufficient negation of the truth of the pretenses, unless the pretense is of such nature that the negation of the truth thereof requires allegations showing affirmatively in what the falsehood consisted in order that the accused may be apprised of the evidence he must meet.  25 Corpus Juris, page 627.  The nature of the pretenses involved here is not such as would require that the negation of their truth should show affirmatively in what the falsehood consisted.  For example, an averment to the effect that General Neon Sign Corporation was not a corporation duly incorporated under the law of the State of Texas would have been no more ·effective in apprising the accused of the evidence he was required to meet than was the averment that said pretense was false.  The opinion is expressed that the exception referred to was not well taken.

Lastly it is contended that the indictment in its entirety discloses that a written instrument was a part of the inducement, and that said instrument is not set forth.  As we understand the indictment, a written instrument was no part of the inducement. · Hence the rule that an indictment must set out by its tenor, or substantially, with good reason for so pleading it, the written instrument which was the inducement or a part thereof, is not applicable.  Branch's Annotated Penal Code, Section 2635.

A check for $9,750, representing the amount agreed upon between appellant, his associates and the injured parties, was delivered to Jones, one of appellant's associates, in Shackelford County. This check was taken by Jones and appellant to Fort Worth in Tarrant County, and presented to a Fort Worth bank.  Upon receiving a wire from the Fort Worth bank, the bank at Albany advised the Fort Worth bank that the check would be paid.  The Fort Worth bank honored the check and it was later paid by the Albany bank.  It appears from the evidence that at the time the check was delivered to Jones the injured parties did not have a sufficient amount of money in the bank to pay it.  They advised Jones that the check would be paid by the Albany bank on the following morning.  At the same time arrangements were made with the bank to pay the check when presented.  It was agreed and understood by the parties and the bank, as we understand the record,

that $9,750 was to be received by the bank for the specific purpose of paying the check.

Appellant contends that, under the holding in the case of Dechard v. State, 57 S. W. 813, the venue was in Tarrant County, his position being that he received the money in Fort Worth. An examination of the facts in the Dechard case discloses that Dechard wrote from Cherokee County to the injured party at Crockett, Texas, to send him $500. The injured party notified the bank at Rusk in Cherokee County that he would honor Dechard's draft for $500, and a draft for said amount was drawn by Dechard in favor of the First National Bank of Rusk on W. E. Mays, the injured party, at Crockett in Houston County. The money was passed by the bank to the credit of Dechard, who drew it out from time to time. It did not appear from the facts that Dechard ever had any dealings with the injured party in Houston County, but on the contrary, the evidence disclosed that the false representations upon which the prosecution was based were contained in letters written by Dechard in Cherokee County to the injured party in Houston County. This court reached the conclusion that the money was paid to Dechard in Cherokee County, and that the venue was improperly laid in Houston County.

The Dechard case is distinguishable upon its facts from the instant case. With the exception of the presentation of the check in Fort Worth by appellant and his associates, every step in the consummation of the contract between the injured parties and appellant appears to have been taken in Shackelford County. The bank in Albany, under the agreement between the parties, received and held $9,750 for the specific purpose of delivering it to appellant and his associates when the check was presented. In receiving the money, the Albany bank acted for appellant and his associates. We quote from Magee on Banks and Banking (2d Ed.) page 475, section 254, as follows:

"When a customer makes a special deposit in a bank, of funds for the purpose of paying notes made by him, and which may be from time to time presented to the bank for payment, it becomes a deposit which can not be used by the bank for any other purpose. Such funds are held by the bank more in the nature of trust funds and must be applied as directed by the debtor. A special deposit can not be used to pay a note due the bank unless when the deposit was made it was understood and intended to be used for such purposes."

In making application of the rule above quoted, the Court of Civil Appeals at San Antonio, Texas, in Cotulla State Bank v. Herron, et al., 191 S. W. 154, upheld a judgment against the bank and a depositor in favor of one holding a check against a deposit made for its payment. We are unable to reach the conclusion that venue was not properly laid in Shackelford County.

Bill of exception No. 6 reflects a requested instruction which the court declined to submit to the jury. The effect of the instruction was that appellant could not be convicted in the event the jury believed that some other influence outside of the representations mentioned in the indictment actuated the injured parties in parting with the title to their property. We find nothing in the evidence calling for this instruction.

Appellant contends in his brief that some of the representations set forth in the indictment were not supported by evidence, and that therefore the court committed error in submitting them in his charge. We find no exception to the charge of the court on the ground that representations not supported were submitted to the jury. Our statute requires that before the charge is read to the jury the defendant "shall present his objections in writing, distinctly specifying each ground of objection." Art. 658, C. C. P.

Many bills of exception are found in the record. An examination of these bills discloses that the majority of them are concerned with statements made by appellant's associates during his absence. The court qualifies these bills with the statement that the testimony was admitted on the theory that the parties were principals and co-conspirators. We think the evidence is sufficient to show that the parties had entered into a conspiracy as contended for by the state. It is the rule that "when a conspiracy is shown, proof of the acts and declarations of co-conspirators is admissible to show the common design, purpose and intent of all of the conspirators, whether such acts and declarations were made before or after the formation of the conspiracy, or whether the same were made before or after the defendant on trial entered into the conspiracy." Branch's Annotated Penal Code, Section 693; Harris v. State, 31 Tex. Cr. R. 414, 20 S. W. 916; Milo v. State, 59 Tex. Cr. R. 201, 127 S. W. 1025; Wilson v. State, 154 S. W. 1015.

A careful examination of all of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—The soundness of the opinion on the original hearing is challenged upon the ground that the indictment was bad for the reason that it failed to set out the written instrument. In the indictment found in the record it appears that the appellant made certain verbal representations, among which are the following:

"* * * that said Emmet A. Jones, as President, had legal authority to execute binding contracts for said Corporation; that if said John H. Sedwick, W. R. Nail, W. G. Webb, John F. Sedwick, Thomas L. Blanton, Jr. and W. Graham Webb, Jr. would pay to said 'General Neon Sign Corporation' $1,625, each, or the sum of $9,750, *that such Corporation by a legal contract would grant to said parties paying said money, and others associated with them, the exclusive right to sell in the State of Texas, excepting 25 counties named, etc.*"

In the motion for rehearing, in quoting that part of the indictment italicized, the word "did" appears in place of the word "would." Obviously, the indictment as copied in the record sets forth but verbal representations of the appellant and contains no averment embraced in a written contract. From the averments of the indictment, it appears that the ultimate design and purpose of the alleged false representations was to acquire $9750.00 in money, and the check was but an incident to that end. The indictment in several places states that the representations were the moving cause which actuated the injured parties in each of them parting with *$1625.00 of their own money aggregating $9750.00*. The acquisition of the *$9750.00 in money* being the *ultimate object* of the alleged fraudulent representations and the check being but one of the means to which resort was had in accomplishing the design, the averment of the value of the check was unnecessary. A different rule would prevail if the offense described in the indictment was the fraudulent acquisition of a check. See Luce v. State, 88 Tex. Cr. R. 46. Under such an averment, proof of the value of the check would be essential. The statute on swindling, Art. 1547, P. C., declares that money, as used in that chapter, includes also "bank bills or other circulating medium current as money." We understand that when

the object of the fraudulent representation is to acquire a sum of money, the presumption will be indulged, in the absence of an averment to the contrary, that by the term "money" is meant United States money such as that described in the statute quoted above, and that under such circumstances no proof of the value of the money is required further than to designate the sum in dollars and cents. Such designation specifically appears in the indictment under consideration. Courts have judicial knowledge of the value of United States money. See Kimbrough v. State, 28 Tex. Ct. App. 367; Branch's Ann. Tex. P. C., Sec. 2620; Berry v. State, 46 Tex. Cr. R. 420, and other cases collated in the section mentioned. See also Ferrell v. State, 68 Tex. Cr. R. 488; Hatfield v. State, 147 S. W. 237; Branch's Ann. Tex. P. C., Sec. 2488. It was said by the Supreme Court of the United States in the case of United States v. Williams, 282 Fed. Rep. 324 that "money is the standard of value, as well as the medium of exchange." See also the case of Juilliard v. Greenman, 110 U. S. 421, and collation of authorities in United States v. Williams, supra. As a common-sense proposition, money being the standard of value and the statute on swindling declaring that the term "money" means money of the United States, it would be difficult to state more accurately the value than to give the number of dollars, as was done in the present case.

Specific reference to the other matters raised in the motion for rehearing is deemed unnecessary as they were sufficiently discussed and properly disposed of in the original opinion.

The motion is overruled.

*Overruled.*