A. C. ANDERSON V. THE STATE.

No. 14977.   Delivered October 26, 1932.
State's Rehearing Denied February 22, 1933.
Reported in 57 S. W. (2d) 118.

The opinion states the case.

*Morriss & Morriss* and *Reed Cozart,* all of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is swindling; the punishment, confinement in the penitentiary for two years.

O. Q. Marshall, the injured party, was the owner of a ranch in Edwards county, where he was engaged in the sheep and goat business. Wolves were killing his stock. Mr. Marshall was secretary of the Wolf Club, which was composed of several ranchmen. He made a contract with appellant to trap for wolves on his ranch, agreeing to pay him $200 for each grown wolf and $100 for each puppy he caught. Appellant established a camp on Mr. Marshall's land and began running a string of traps. From time to time he took wolves to Mr. Marshall, for which he received the stipulated price. He represented to Mr. Marshall that he had caught the wolves on his land.

Earnest Baker, an accomplice witness, had been running a barbecue stand for appellant in Del Rio. It appears that Baker constantly drank intoxicating liquor. He lost money for appellant and appellant was forced to discharge him. Baker testified for the state that appellant requested him to trap wolves in Zavalla county and bring them to Edwards county to him. He said appellant agreed to pay him $25 a head if he would deliver the wolves to the place where he was trapping. He said, further, that pursuant to his agreement with appellant, he caught wolves in Zavalla county and delivered them to appellant's camp in Edwards county. He testified that he advised Mr. Marshall that he thought he could produce evidence that would secure the conviction of appellant for swindling. He entered into an agreement with Mr. Marshall by virtue of which he was to receive $500 for the arrest of appellant and $500 in case he was convicted. Thereafter, Mr. Marshall and other witnesses met Baker on a highway and tatooed the ears of two wolves he had in his car. Baker then left with the wolves, going in the direction of appellant's camp. Subsequently appellant delivered the scalps of these wolves to Mr. Marshall, representing that he had caught the wolves on Mr. Marshall's land. After the arrest of appellant Baker was paid $500 by Mr. Marshall. After appellant had been indicted, Baker signed an affidavit in which he stated that the testimony he had given against appellant before the grand jury was false; that he tied the tatooed wolves near appellant's camp and that he then advised appellant that he had taken the wolves out of his traps

and tied them to a tree; that appellant was innocent of the offense he had charged him with.

In view of the disposition we make of the case, we deem it unnecessary to set out the facts and circumstances in evidence corroborative of Baker's testimony.

Appellant denied that he had entered into an agreement with Baker to bring wolves to him from Zavalla county. He declared that each wolf he delivered to Mr. Marshall had been caught by him on Mr. Marshall's land. In short, his testimony, if believed by the jury, entitled him to an acquittal.

We deem it unnecessary to discuss in detail appellant's motion to quash the indictment. One of the grounds embraced in the motion was that the indictment failed to negative by special averment the truth of the pretenses. After alleging that appellant represented to Mr. Marshall that the wolf for which he received pay in the sum of $200 had been caught on Mr. Marshall's land, it was averred in the traverse clause that in truth and in fact said wolf had not been trapped upon the lands of Mr. Marshall but had been caught at another and different place. We understand it to be the general rule that an averment that the pretenses were false is sufficient negation of the truth of the pretenses, unless the pretense is of such nature that the negation of the truth thereof requires allegations showing affirmatively in what the falsehood consisted in order that the accused may be apprised of the evidence he must meet. 25 Corpus Juris, page 627; Raymond v. State, 116 Texas Crim. Rep., 595, 33 S. W. (2d) 192. The nature of the pretenses involved here is not such as required that the negation of their truth should show affirmatively in what the falsehood consisted. It follows that we are of the opinion the motion to quash was properly overruled.

Appellant filed an application for a change of venue, wherein prejudice and a dangerous combination instigated by influential citizens were claimed to preclude the probability of a fair and impartial trial being accorded him. Upon the issue being joined, appellant introduced several witnesses. The state introduced no testimony.

The record shows that Edwards county has a population of 2,764 persons, according to the census of 1930, and that at the previous general election there was a vote of 802. The district clerk estimated the number of qualified jurors in the county to be about 300. He said, however, that there were a large percentage of the qualified voters—Mexicans and exempt persons— who were never called for jury service. A majority of the

qualified voters lived in the county seat and vicinity. The county is devoted almost entirely to goat and sheep ranching. Of the jury serving citizens, 12 had been on the grand jury that had indicted appellant; 12 had served on the jury that had previously tried appellant for an offense involving practically the same facts as the present case; 12 or more men were members of the Wolf Club of which Mr. Marshall, the injured party, was secretary. Appellant introduced 17 witnesses from various parts of the county. According to our analysis of the testimony of these witnesses, it reveals that the case had been generally discussed throughout the county. In short, their testimony was to the effect that the facts were known everywhere in the county and generally discussed. Further, as we comprehend the record, the belief in appellant's guilt was general. Practically all of the witnesses testified that they had never heard an expression in appellant's favor. Some of them testified that they did not believe appellant could get a fair and impartial trial. Others entertained a contrary view. However, generally these witnesses entertained the view that appellant was guilty. Of the thirty-five men on the regular jury panel, one disqualified as a witness, three as having been on the grand jury, ten as having formed opinions and conclusions which would influence their verdict. Of the remaining twenty-one, seven stated that they had formed opinions that defendant was guilty. Several of them admitted that it would require evidence to remove that opinion. Thus, of the regular panel, more than half, seventeen out of thirty-one, not disqualified otherwise, held opinions appellant was guilty. Appellant exhausted all but two of his challenges on the regular panel, from which seven jurors were selected. Fifteen talesmen were brought in to make up the remaining five jurors. Of these fifteen talesmen, seven disqualified on their voir dire as having formed opinions which would influence their verdict. Seven admitted that they had opinions, some of them stating it would require evidence to remove such opinions. After the jury was selected, in spite of the fact that appellant challenged them, there were on the jury three men who were related to members of the Wolf Club, one a son-in-law of a member, one a nephew of two members and a grandson of another member, and one a brother-in-law of two members. Another of the jurors was a brother-in-law of private prosecutor. Appellant renewed his motion for a change of venue, calling attention to the fact that many of the jurors had disqualified and that most of them were of the opinion that appellant was guilty. In the trial of appellant on another

case involving substantially the same facts as in the present case, the evidence was heard and the court later permitted the state to withdraw its announcement of ready and dismiss the case. The courtroom was filled at the time of this trial. The opinion is expressed that, under the circumstances disclosed by the record, the venue should have been changed. We are unable to escape the conclusion that prejudgment of appellant and his case rendered it impossible for him to obtain that character of fair and impartial trial contemplated by the Constitution. It is the general rule that, if conflicting theories as to prejudice arise from the evidence, the trial court has the discretion of adopting either theory; it being his duty to weigh the evidence. McNeely v. State, 104 Texas Crim. Rep., 263. However, when the evidence is such that it leads to the conclusion that bias, prejudice, or prejudgment of the appellant, or his case, is such as to render it impossible that a fair and impartial trial can be given him, the trial court is without discretion to refuse the application. McNeely v. State, supra; Parker v. State, 111 Texas Crim. Rep., 140; Boyd v. State, 111 Texas Crim. Rep., 405, 13 S. W. (2d) 104.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—There is set out in the state's motion for rehearing excerpts from the evidence of a number of witnesses who testified upon the hearing of the application for change of venue. We have carefully re-examined all the evidence introduced upon that issue, and considering it in the light of other matters revealed by the record and alluded to in our original opinion, we think the disposition of the case was correct. It is unnecessary to write further, as it would only result in setting out in detail the evidence which is thought to justify our conclusion. This would extend our opinion to unreasonable length.

The state's motion for rehearing is overruled.

*Overruled.*