STATE, RESPONDENT, *v.* MASON, APPELLANT.

(No. 4,906.)

(Submitted January 4, 1922. Decided January 23, 1922.)

[204 Pac. 358.]

*Criminal Law—False Pretenses—Checks—Pleading and Proof —Variance—Restoration of Money—Offer of Proof—Improper Refusal—Statutory Construction.*

False Pretenses—Information—Proof—Variance—What Does not Constitute.
  1. The information charged defendant with obtaining money from a bank by false pretenses. The evidence showed that the bank had made a loan to him on his false representations that he was the owner of a large amount of property, he drawing checks on the amount of his note placed to his credit. *Held,* that there was no fatal variance between the allegations of the information and the evidence.

Same.
  2. Proof that defendant obtained a less amount of money by false pretenses than that alleged in the information did not constitute a fatal variance.

Same.
  3. There was no variance between the allegation that defendant obtained money by false pretenses and proof that he procured it by means of checks.

Same—Money Restored—Offer of Proof—Improper Refusal.
  4. *Held,* in view of section 9328, Revised Codes 1907, providing that in a prosecution for an offense against the property of another, the

---

1. Obtaining loan of money as constituting crime of obtaining money by false pretenses, see note in Ann. Cas. 1916C, 1158.

jury must ascertain and declare in their verdict not only the value of the property taken but also the amount restored, that refusal to permit defendant to introduce evidence to show the amount restored to the person from whom he obtained money by false pretenses was prejudicial error.

Statutory Construction—Rule.

5. In the construction of a statute every word, phrase, and term must be considered, and none is to be held meaningless if it is possible to give it effect.

*Appeals from District Court, Deer Lodge County; Geo. B. Winston, Judge.*

JACK MASON was convicted of obtaining money by false pretenses, denied a new trial, and appeals from the judgment and the order denying a new trial. Reversed and remanded for new trial.

*Mr. John W. James,* for Appellant, submitted an original and a supplemental brief; *Mr. Sydney Sanner,* of Counsel, and *Mr. James* argued the cause orally.

The information is insufficient. The method of obtaining the money, that is, that the money was obtained as a loan and that a note was given for the sum of ten thousand dollars, is not shown; in other words, the information does not contain "a statement of the facts constituting the offense, in ordinary and concise language, in such a manner as to enable a person of common understanding to know what was intended" (Pen. Code, sec. 9146, subd. 2), and clearly fails to conform to the provisions of section 9155, subdivision 6. (*State* v. *Beesskove,* 34 Mont. 41, 85 Pac. 376; *People* v. *Carpenter,* 6 Cal. App. 231, 91 Pac. 809; *State* v. *Bratton,* 56 Mont. 563, 186 Pac. 327; *People* v. *Neetens,* 42 Cal. App. 596, 184 Pac. 27; *People* v. *Griffith,* 122 Cal. 212, 54 Pac. 725; *People* v. *Wakely,* 62 Mich. 297, 28 N. W. 871; *People* v. *Mahony,* 145 Cal. 104, 78 Pac. 354; *People* v. *McKinna,* 81 Cal. 158, 22 Pac. 488.) All the authorities on criminal pleading agree that the absence of a direct and positive allegation in the description, substance, nature or manner of the offense of

false pretense cannot be supplied by any intendment, argument, or implication. The ambiguity and uncertainty of the language used in charging this essential ingredient of the offense is a fatal defect. The money must be distinctly averred to have been obtained by means of the false pretense. (*State* v. *Hurst*, 11 W. Va. 54; *State* v. *Paul*, 69 Me. 215; *State* v. *Chapel*, 117 Mo. 639, 23 S. W. 760; *State* v. *Connor*, 110 Ind. 469, 11 N. E. 454; *Bryant* v. *Commonwealth*, 104 Ky. 593, 47 S. W. 578.)

It has been held that the proof must establish the obtaining of the very property alleged in the indictment or some part of it; that an allegation of obtaining money is not satisfied by proof of obtaining some other property even so nearly the equivalent of money as evidences of money indebtedness, or orders to pay money. (*Schleisinger* v. *State*, 11 Ohio St. 669; *Baker* v. *State*, 31 Ohio St. 314; *Commonwealth* v. *Wood*, 142 Mass. 459, 8 N. E. 432; *Queen* v. *Bradly*, 26 U. C. Q. B. 13.)

As to there being a fatal variance between the allegations of the information and the proof, we submit the following cases and especially call the court's attention to the case of *Maxey* v. *State*, 85 Ark. 499, 14 Ann. Cas. 509, 108 S. W. 1135, and *King* v. *Warvell*, 1 Moody C. C. 224. It is held in *King* v. *Warvell* that where all that was obtained was credit, no offense was committed. Where money charged to have been taken, was alleged to have been gold, silver and paper money of the United States, it is necessary to prove that it was money of the United States and that it was gold, silver and paper money, and the proof of any other kind of money is a fatal variance. (*Marshall* v. *State*, 71. Ark. 415, 75 S. W. 584.) An indictment for receiving money under false pretense must describe the money with the same particularity and certainty as required in an indictment for larceny, and the allegations of the indictment must be sustained by proof as to the kind of money described therein. (*Maxey* v. *State*, 85 Ark. 499, 14 Ann. Cas. 509, 108 S. W. 1135.) In this case as in the case

at bar the money described in the information was not paid to the defendant, but the amount was passed to his credit on account in the bank, and (as in the case at bar) that his account was from time to time drawn upon in favor of other parties. This was held a fatal variance. Charging intent to steal United States two cent postage stamps, being descriptive of the property and the offense alleged, must be proven as laid. (*Starcham* v. *State*, 62 Ark. 538, 36 S. W. 940.) The same rule applies in a prosecution for obtaining money by false pretense, and where "the proof was not responsive to the allegations for this reason, the case must be reversed." (*Wilburn* v. *State*, 60 Ark. 141, 29 S. W. 149.)

"It is held that if the thing obtained is not money or other article within the express words of the statute, but merely a credit on account, which may bring money, the substantial offense is not committed." (2 Bishop's Criminal Law, sec. 489.) Above quotation is taken from *Jamieson* v. *State*, 37 Ark. 445–447, 40 Am. Rep. 103. Proof of securing the satisfaction of a debt is not proof of money and the variance is fatal. (*Jamieson* v. *State*, 37 Ark. 445, 40 Am. Rep. 103.) Obtaining a credit upon an order drawn on a third person is not a violation of the statute even if obtained by a false representation. (*State* v. *Martin*, 167 Mo. App. 346, 151 S. W. 504.) The variance is fatal where there is an allegation in the indictment of the obtaining of money, where the proof shows that the property obtained is a check. (*Leiske* v. *State*, 60 Tex. Cr. 276, 131 S. W. 1126.) There is a fatal variance between an indictment charging the unlawful obtaining of money from a person and evidence that a check was obtained. (*Lory* v. *People*, 229 Ill. 268, 82 N. E. 261; *People* v. *Warfield*, 261 Ill. 293, 103 N. E. 979); even where the check is cashed and the money is obtained. (*People* v. *Cronknite*, 266 Ill. 438, 107 N. E. 703.) The allegation of the obtaining the note of one person, and proof of the joint note of the person charged and another person is a fatal variance. (*People* v.

*Reed,* 70 Cal. 529, 11 Pac. 676.) On an indictment for embezzling bonds a conviction cannot be had of the embezzlement of the proceeds derived from sale of the bonds. (*State* v. *Hanley,* 133 Iowa, 474, 110 N. W. 9, 14.) An indictment charging the obtaining money by false pretense is not sustained by proof of obtaining the satisfaction of a debt by false representations. (*State* v. *Vaughn,* 164 Mo. 536, 65 S. W. 236.)

Under section 9328 of the Revised Codes, provision is made that the jury shall "declare in their verdict the value of the property taken, embezzled or received and the amount restored, if any, and the value thereof." In this case the defendant offered to prove a full repayment of all money received by the defendant as a loan from the Daly Bank & Trust Company by an assignment of Liberty Bonds which the bank had accepted. This was certainly competent to go to the jury under the provisions of said section 9328 of Montana Code. This section provides what the jury may do. But how can they do it if the court prevents them from hearing the evidence? If the jury could not determine this fact, by reason of such ruling, it was error for the court to prevent them from performing one of the duties that was incumbent upon them. In Nebraska, under a statute containing many of the provisions of section 9328, and with very similar intent, it was said: "It is imperative that the jury comply with the terms of the foregoing statute and declare in their verdict the value of the property stolen, embezzled or falsely obtained." (*Lee* v. *State,* 103 Neb. 87, 170 N. W. 359; *Fisher* v. *State,* 52 Neb. 531, 72 N. W. 954; *Holmes* v. *State,* 58 Neb. 297, 78 N. W. 641; *Henning* v. *State,* 102 Neb. 271, 166 N. W. 617.) If after the evidence, instruction and special verdict had been submitted to the jury, they had not returned in such special verdict a finding of the facts, the defendant could not complain of their lack of action. In this case, however, the court by its ruling prevented such finding, and thus deprived the defendant of a constitutional guaranty.

*Mr. Wellington D. Rankin,* Attorney General, *Mr. L. A. Foot,* Assistant Attorney General, *Mr. J. B. C. Knight,* County Attorney, and *Mr. W. G. Gilbert,* for Respondent, submitted a brief; *Mr. Foot* and *Mr. Knight* argued the cause orally.

The court committed no error in overruling defendant's objection to the introduction of any evidence on the ground and for the reason that the information does not state facts sufficient to constitute a public offense and does not substantially conform to the provisions of sections 9147, 9148 and 9149. The information comes clearly within the rule as laid down in *State* v. *Bratton,* 56 Mont. 563, 186 Pac. 327, in which the court states "that in order to convict of the crime here charged it is necessary that the prosecution allege and prove (1) the making by the accused to the person injured of one or more representations of past events or existing facts; (2) that such injured party believed such representations to be true, and relying thereon parted with money or property, which was received by the accused; (3) that such representations were false; (4) were made knowingly and designedly with the intent to defraud such other person." (See, also, 2 R. C. L., p. 857.)

Where money or property has been obtained by false pretenses, with intent to defraud, a subsequent restoration or payment is no defense. See 19 Cyc. 418, and the cases cited in support thereof, as follows: "On the principle that the injury is to the estate, defendant cannot plead the prosecutor has condoned the crime and settled with defendant, that he has offered to return the property to the prosecutor, that the prosecutor has regained possession of the goods, that their loss has been made good to him, or that the prosecutor has signed a paper stating that he did not rely on the pretenses." The offense being complete when the money or property is obtained by false pretenses, it is not purged by a subsequent restoration or repayment. (*Donohoe* v. *State,* 59 Ark. 378, 27 S. W. 226;

*Commonwealth* v. *Coe,* 115 Mass. 481; *People* v. *Oscar,* 105 Mich. 704, 63 N. W. 971.)

Defendant contends that the questions with relation to restoration were asked to prove full restoration and were admissible under section 9328. Defendant had no offer of proof before the court, and did not state the purpose of the questions. The court was never told the purpose of the questions and under the rule stated above the evidence was certainly immaterial and irrelevant. This comes clearly within the rule by this court in the case of *State* v. *Brooks,* 23 Mont. 146, 57 Pac. 1038.

MR. COMMISSIONER HORSKY prepared the opinion for the court.

The defendant, Jack Mason, was convicted of the crime of obtaining money by false pretenses under the provisions of section 8683 of the Revised Codes of 1907, and sentenced to imprisonment in the state penitentiary. From the judgment of conviction and from an order denying his motion for a new trial defendant appeals.

The facts developed by the state at the trial disclose that the defendant appeared at the banking-room of the Daly Bank & Trust Company of Anaconda, Montana, on or about the fifteenth day of January, 1921, and in a conversation with J. R. Harrington, the cashier of said bank, represented himself to be a rancher in the Big Hole Basin, in Beaverhead county, Montana, and stated that he wished to move his family to Anaconda and was desirous of establishing business relations with the bank. Mr. Harrington informed the defendant that Mr. E. J. Bowman, the president of the bank, was absent from the city, and to call again. Defendant returned on the nineteenth day of January, but found that Mr. Bowman was still absent. He visited the bank again on January 24, and found that Mr. Bowman had returned.

Defendant at that time stated to Mr. Bowman that he owned and operated a ranch in the Big Hole country; that he had

about 1,500 head of cattle on his ranch; that he had been doing his banking business with Yegen Bros. of Butte and owed them about $6,000; that he had some accounts he could not pay; that he could borrow no more money; and started to tell Mr. Bowman about his property, when interrupted by Mr. Bowman with the request that the information be given to Mr. Harrington, the cashier, who would fill out the printed form of property statement used by the bank, and stated that the bank could then decide whether or not it would make the loan. The information given by the defendant was incorporated in a property statement by Mr. Harrington. Among other assets given by the defendant and noted in the statement were 3,480 acres of land, over 1,500 head of livestock, and about 2,500 tons of hay. Mr. Bowman discussed the various items in the statement with Mr. Mason, and particularly the item of 206 head of beef cattle, which cattle defendant stated he had sold, or contracted to sell, delivery to be made in about sixty days, and from the proceeds of which sale he would satisfy the loan he desired the bank to make. Some further conversation was had as to the weight of these animals and the price to be paid by the buyer. Mr. Bowman went over the statement with Mr. Mason and questioned him in regard to the facts set forth therein. The statement, however, through an oversight, was not signed by the defendant until January 27.

After the discussion was concluded, Mr. Bowman authorized the loan of $10,000. Immediately thereafter a demand note for $10,000 was drawn by Mr. Harrington, payable to the Daly Bank & Trust Company and signed by Mr. Mason; the $10,000 being credited to Mason's account. At the same time a draft for $6,000 was drawn, payable to Yegen Bros. Bank in Butte; the draft was delivered to the defendant and paid by the Daly Bank & Trust Company on January 25. Two checks, bearing date the twenty-first day of January, 1920, payable to cash, for the sum of $1,200 and signed by the defendant, were paid to him in cash on January 24, 1921. Another check,

bearing date the twenty-fourth day of January, 1921, for the sum of $250 and signed by the defendant, was presented by him to the bank and a draft for said amount issued on Seattle and delivered to him. The last check drawn by the defendant on his account was dated January 25, 1920, for the sum of $500, payable to John T. Stevenson, and was paid by the bank on January 27, 1921. There was paid to the defendant, or for his benefit, by the bank and charged to his account, the sum of $7,700. The bank, having learned that the representations made to it by Mr. Mason were false, withdrew the balance of his credit, amounting to $2,050, and stopped payment on the draft issued on Seattle. Mr. Mason had no account at the bank prior to January 24, 1921.

The testimony showed that both Mr. Harrington and Mr. Bowman believed the representations made to them by Mr. Mason as to the amount of property he owned, and by reason of such representations Mr. Bowman authorized the loan. The testimony on the part of the state further showed that defendant did not own the property set forth in the property statement, and that such representations were false.

The defendant did not take the witness-stand, so that the testimony of the state remains practically uncontradicted. He offered to prove by the witnesses Latham and Bowman an assignment to the bank of $8,000 worth of bonds which he claims the bank accepted as full restitution of the amount of money he had received from the bank. The offer, however, was by the court refused.

It is contended that the information does not state facts sufficient to constitute a public offense. With this we do not agree. The information sufficiently charges the offense of obtaining money by false pretenses under section 8683 of the Revised Codes of 1907, and clearly meets the requirements of the rule laid down in *State* v. *Bratton,* 56 Mont. 563, 186 Pac. 327.

The contention that there is a fatal variance between the **[1-3]** allegations of the information and the proof in this,

that the information charges the obtaining of money by false pretenses, while the proof shows merely the passing of a credit by the bank to defendant's account on the faith of the note, is likewise without merit.

When the $10,000 was credited to Mason's account, possession and title to the money passed from the bank to Mason, and it was as much a money transaction as if he, in fact, had received the money and placed it back in the bank, or had received the money and carried it away with him. It was his to do with as he liked. But in this case defendant, on the day charged in the information, actually received on two checks which he presented at the teller's window the sum of $1,200 in cash. There was also delivered to him, immediately following the execution of the note, a draft for $6,000 payable to Yegen Bros. of Butte, which was paid by the Daly Bank & Trust Company on the day following.

Nor is the fact that defendant received only a part of the money alleged in the information of any consequence. "It is sufficient to prove that some definite portion of the goods was obtained by means of the alleged false pretense. Proof of obtaining a less sum of money or a smaller quantity of property than that alleged is not a fatal variance." (25 C. J. 641.)

That the defendant obtained the money by means of checks is likewise of no consequence. In this connection we quote with approval the following from a California case: "There is no variance between the allegations of the information and the proof. The allegation is that the defendant procured money from Norwood, and the proof is that he did procure money, but it was procured by the means or use of a check or written request which Norwood made upon the bank for the payment of the money. There may be a difference between getting money directly by handling the coin over in hand and giving a request in writing to a third party who complies with the request and hands it over, but the effect is the same, and the distinction is highly technical. An appeal that de-

pends upon such question for reversal is devoid of merit. The defendant obtained the money, and obtained it from Norwood, no matter what means were used in finally conveying the money from Norwood to the defendant. (*People* v. *Whalen,* 154 Cal. 472, 98 Pac. 194.)" (*People* v. *Leavens,* 12 Cal. App. 178, 106 Pac. 1103.)

We further believe that the weight of authority and the best reasoned cases support the proposition that "An averment of obtaining a certain sum of money is sustained by proof of obtaining a check, draft, warrant, order, or the like, which is afterward paid or honored." (25 C. J. 641.)

Other arguments advanced by defendant, dealing with the question of variance and failure of proof, have been carefully considered and found to be without merit.

It is earnestly insisted that the lower court committed error [4] in refusing to receive certain testimony offered by defendant to show the amount and value of the property restored to the Daly Bank & Trust Company prior to the trial of the case, and in support of their position invite attention to section 9328 of the Revised Codes of 1907, which reads as follows: "When the indictment or information charges an offense against the property of another, by robbery, larceny, burglary, fraud, or the like, the jury, on conviction, must ascertain and declare in their verdict the value of the property taken, embezzled, or received, and the amount restored, if any, and the value thereof; but their failure to do so does not affect the validity of their verdict." This section of the statutes, and in substantially the same form, was enacted by the first territorial legislature of the then territory of Montana. In 1895 the old section was amended, and among other amendments was one substituting the word "must" for the word "shall" appearing in the old section. This is of no especial significance, except, perhaps, as evidencing a desire on the part of the legislature to give added emphasis to their intention to make its provisions mandatory.

There has not been called to our attention, nor are we able
to find, another state having a statute like ours.   There are a
few states, notably, Wyoming, Nebraska and Ohio, which have
statutes expressly requiring the verdict to specify, in terms, the
value found, but in none of these states does the statute re-
quire the jury to find the amount of the property restored or
the value thereof, nor do any of the statutes contain the
phrase found in the concluding part of the section of our
statute.

The supreme courts of Wyoming (*Thomson* v. *State,* 21
Wyo. 196, 130 Pac. 850), and Nebraska (*Holmes* v. *State,* 58
Neb. 297, 78 N. W. 641), have quoted with approval the
following from the case of *Armstrong* v. *State,* 21 Ohio St.
357: "Horse-stealing is larceny, and the language employed
in the 167th section of the Code [our section 6252, *supra*],
is clearly broad enough to embrace that offense.   It expressly
includes in its provisions the offense of obtaining property
by false pretenses, and the grade of punishment affixed to this
offense by the statute, like that of horse-stealing, does not
depend upon the value of the property obtained.   Since, then,
the section applies expressly to one of these offenses, we can-
not well hold that it has no application to the other, for there
is no reason for applying it in one case that is not equally
strong in the other.   The determination of the grade of pun-
ishment is not, then, the only reason for this provision of the
Code.   Although the value of the property stolen in one case,
or falsely obtained in the other, may not affect the grade
or kind of penalty imposed for these offenses, it may influence
the degree of punishment to be inflicted.   The statute gives
a wide discretion to the court as to the degree of punishment
to be adjudged, on conviction.   In this view, it may have
been regarded as material to the substantial rights of the de-
fendant, that the actual value of the property stolen, or
falsely obtained, should be 'ascertained and returned' in the
verdict, and that it should not be left, as on a general verdict
of guilty, according to respectable authorities it might be

,Bishop's Criminal Procedure, sec. 719), to be implied to
be the amount stated in the indictment. But whatever rea-
sons may have induced the enactment of the section, its terms
are such, we are constrained to hold, that the offense for
which the defendant was tried, was embraced in its provisions.
To hold the reverse would virtually be a judicial repeal of
the section. The verdict was not, therefore, in accordance with
the express requisition of the statute, and should have been
set aside on the motion of the defendant made for that pur-
pose."

We quote the above because, in our opinion, although de-
cided under a statute in many respects unlike ours, it is
persuasive of the purpose and intent of our legislature in
enacting the section of. the statute now under consideration.
But, by reason of the fact that our statute adds a provision
requiring the jury to find the amount of the property restored
and the value thereof, we are at liberty to add another reason
for the enactment of the present section, and that is that
it might, to some extent at least, be considered by the jury
as a circumstance in determining the question of the intent
with which the defendant acted at the time of the commission
of the alleged offense with which he is charged. But what-
ever may have been the purpose for its enactment, we are not
at liberty to disregard its provisions.

It is a familiar and well-settled rule of statutory con-
struction: "That every word, phrase and term of a statute
[5] shall be considered, and none shall be held to be mean-
ingless if it is possible to give it effect." (*State ex rel. Bitter
Root Valley Irr. Co.* v. *District Court,* 51 Mont. 305, 152
Pac. 745; ·sec. 7875, Rev. Codes 1907.) To say that the con-
cluding clause of this section cures the omission on the part of
the court to follow its plain provisions would, in our opinion,
violate the above rule and would, in effect, amount to a judi-
cial repeal of the section. The phrase "but their failure to do
so does not affect the validity of their verdict" was intended
to cure any omission on the part of the jury to follow the

mandate of the statute, but in no sense relieved the court, when properly requested so to do, of the obligation to follow its command in any case embraced within its provisions.

The rejected testimony should have been admitted, and an instruction in the language of this section of the statute, with the last clause thereof omitted, should have been given to the jury for their guidance. The exclusion of the testimony offered constituted error prejudicial to the substantial rights of the defendant.

It will be unnecessary to consider the remaining specifications of alleged error, because some have already been disposed of by what has been stated in this opinion and the others are deemed wholly without merit.

We recommend that the judgment and order appealed from be reversed and the cause remanded to the district court for a new trial.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed and the cause is remanded to the district court for a new trial.

*Reversed and remanded.*