Argued February 24, 1977, reversed and remanded for new trial May 2, reconsideration denied June 8, petition for review denied September 7, 1977

STATE OF OREGON, *Respondent,*
*v.*
DONALD J. KELLEY, *Appellant.*
(No. C-76-02-2476, CA 6668, No. C-76-02-2477, CA 6669)
(Consolidated cases)
563 P2d 749

Donald R. Crane, Klamath Falls, argued the cause for appellant. With him on the brief was Crane & Bailey, Klamath Falls.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, W. Michael Gillette, Solicitor General, and Stephen H. Keutzer, Chief Counsel, Salem.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

TANZER, J.

## TANZER, J.

Defendant appeals his conviction on two counts of first degree theft, ORS 164.055. The charges arose from a complicated series of transactions between defendant and the City of Klamath Falls involving the annexation, subdivision and development of defendant's land on the outskirts of the city. Most of the basic facts are undisputed. At trial the critical issue was whether defendant acted with the requisite intent.

In May 1972, defendant, a civil engineer, purchased a 170-acre parcel of land in an unincorporated area adjoining the city limits of Klamath Falls. That property was adjacent to another parcel of land owned by defendant's mother-in-law. Shortly thereafter, 100 acres of defendant's original 170-acre parcel was annexed to the city. Approximately half of the annexed portion was then subdivided into residential lots and became known as the Lynnewood platted subdivision (Lynnewood). The City then initiated an improvement district for the purposes of constructing streets, a storm drain system, a water system, and a sewer system within Lynnewood. The entire annexed portion of defendant's land was declared to be benefited by these improvements. The improvements were financed by general obligation warrants which were to be redeemed by the issuance of bonds pursuant to the Bancroft Bonding Act.[1] The bonds were to be ultimately satisfied through pro rata assessments of the benefited property.

A corporation which was wholly owned by defendant and his wife[2] submitted the only bid for the management contract to oversee the Lynnewood improvements and a contract between the corporation and the City was executed on July 2, 1973. The contract provided that the corporation would manage

---

[1] ORS 235.205, et seq.

[2] For purposes of this proceeding the wholly-owned corporation was treated as the alter-ego of defendant. Defendant does not contend that the corporation should be treated as a separate entity.

all required work and would be reimbursed by the City, at regular intervals, upon receipt of invoices, for all costs, including a seven percent administrative fee. The bonding arrangements and the management contract only authorized expenditures for the enumerated improvements in Lynnewood.

After July 2, 1973, while the authorized improvements were being made, defendant ordered a subcontractor, who was working in Lynnewood, to dig two test pits on defendant's mother-in-law's adjoining property to determine whether that property contained an adequate supply of rock to justify development of a quarry. The costs were billed by defendant to the City as expenses incurred for construction of streets and sewers in Lynnewood and the City paid them.

The underlying theory of the indictment is that by billing the City for the cost of test pits, defendant knowingly received payment for work which was unrelated to the Lynnewood improvements and which inured to his personal benefit. This, the state contends, constitutes a theft of money from the City.

I

In order to prove that the test pits on the adjoining property were for the personal benefit of defendant rather than Lynnewood, the state introduced evidence that there was already more rock available on Lynnewood than was required for the contracted improvements. In order to prove defendant's knowledge of the abundance of rock on Lynnewood the state then introduced, over defendant's objections, evidence that defendant had sold some of the excess rock from Lynnewood for his own account. It then went one step further and proved that defendant had denied under oath making such sales in a deposition taken in connection with a foreclosure suit almost a year after

the charged theft.[3] Defendant contends in separate assignments of error that evidence of the sale and of his denial was inadmissible as proof of prior crimes.[4]

■ In order to determine the admissibility of the challenged evidence we must determine first whether it is relevant and second, if so, whether its prejudicial impact nevertheless outweighs its probative value. *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975); *State v. Zimmerlee,* 261 Or 49, 492 P2d 795 (1972); *State v. Hockings,* 29 Or App 139, 562 P2d 587 (1977); *State v. Holmes,* 22 Or App 23, 537 P2d 566, *rev den* (1975).

■ The fact that there was excess rock on Lynnewood and that defendant sold some of that rock tends to prove that he knew there was no need for additional rock on the project. This, in turn, supports an inference that the digging of the test pits was not intended to benefit Lynnewood but rather to develop a private enterprise at the expense of the City. Thus, defendant's sale of the rock was relevant to the issue of his intent. *See State v. Seydell,* 252 Or 160, 163, 446 P2d 678 (1968); *State v. McClard,* 81 Or 510, 160 P 130 (1916); *State v. Williams,* 16 Or App 361, 364, 518 P2d 1049, *rev den* (1974); McCormick on Evidence 451, § 190 (2nd ed 1972).

The mere fact that the sale was arguably criminal is insufficient to outweigh its probative value. The "defendant cannot exclude evidence by making his actions criminal where the evidence would be admissible if his act was lawful." *State of Oregon v. Long,* 195 Or 81, 113, 244 P2d 1033 (1952). The prosecution

---

[3] At the time of trial defendant was charged, in a separate indictment, with perjury for his statements in the civil deposition. There were no charges pending in connection with his sale of the rock.

[4] The "prior crimes" rule is only one application of the principle that a person's past conduct is inadmissible to prove that he engaged in other similar conduct at another time. *State v. Pitts,* 29 Or App 59, — P2d — (April 11, 1977). Although frequently referred to as "Other crimes" evidence, the rule applies regardless of whether the prior conduct was criminal.

did not assert that the sale of rock was improper or that it demonstrated defendant's criminal disposition — only that it tended to prove knowledge and thus intent. Although evidence of the sale may have incidentally reflected adversely on defendant's character, it was not so inflammatory as to justify the exclusion of otherwise relevant evidence.

■■ The relevance of defendant having denied the sale of rock in a later deposition is not evident. The state contends that defendant denied the sale in an effort to cover his tracks because he knew that the sale would conflict with his assertion that the pits were dug for the benefit of Lynnewood. Generally, acts which are intended to obstruct justice or avoid punishment are relevant to prove consciousness of guilt. *See* McCormick on Evidence 451, § 190 (2nd ed 1972). Here, however, the logical connection between defendant's denial of the sale and his purpose in digging the test pits is so remote and so speculative that evidence of the former has little tendency to prove the latter. Although it is possible that defendant denied the sale of rock for the reason suggested by the state, there are many more plausible explanations for the denial. For example, it may have been motivated by defendant's belief that the sale itself was wrongful. The inferential force of the evidence to prove a relevant fact is negligible.

Under these circumstances evidence of defendant's denial should have been excluded. The principal effect of the evidence was to portray defendant as a deliberate perjurer and a person of bad character. Because of the jury's natural tendency to give undue weight to such a portrayal, and because defendant's defense was a testimonial denial of wrongful intent, admission of the evidence was prejudicial and constitutes reversible error.[5] *State v. Pitts,* 29 Or App 59, 562 P2d 562 (1977).

---

[5] In view of our disposition of this issue, we need not consider whether it was improper to permit the reading of defendant's civil deposition in a criminal proceeding.

## II

We now review defendant's other assignments of error which will likely arise in the event of retrial.

 Defendant contends that the trial court erred in denying his motion for judgment of acquittal. The basis of his motion was that the state had failed to show that defendant intended to deprive the City of Klamath Falls of money. Simply stated, defendant's argument is that since, under the terms of the Bancroft Bonding Act, the benefited land is ultimately responsible for the cost of the improvements and since defendant owned all of the benefited land, the cost of digging the test pits would ultimately be borne by defendant, not by the City. Therefore, since defendant was obligated to repay all money obtained from the City, he argues that he could not be guilty of theft.

A person commits theft when, by one of several enumerated means, he obtains property with intent to deprive another of it or with intent to appropriate it to himself or to a third party. ORS 164.015. The intent must be to effect a permanent transfer of the property or of the major portion of its economic value or to dispose of the property so as to make the owner's recovery unlikely.[6]

---

[6] ORS 164.005 provides in part:

"As used in chapter 743, Oregon Laws 1971, unless the context requires otherwise:

"(1) 'Appropriate property of another to oneself or a third person' or 'appropriate' means to:

"(a) Exercise control over property of another, or to aid a third person to exercise control over property of another, permanently or for so extended a period or under such circumstances as to acquire the major portion of the economic value or benefit of such property; or

"(b) Dispose of the property of another for the benefit of oneself or a third person.

"(2) 'Deprive another of property' or 'deprive' means to:

"(a) Withhold property of another or cause property of another to be withheld from him permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to him; or

By receiving unauthorized payments, defendant surreptitiously obtained money from the City and in exchange gave back a right to a security interest in land. It takes little financial sophistication to recognize the difference in character and value between money in hand and a secured promise to pay money in the future. The secured obligation to repay all sums received does not, as defendant contends, guarantee that the City would not suffer permanent loss of the money which was wrongfully received. The value of the benefited land may be insufficient to cover the cost of the improvements. (See part III below.) Moreover, in all likelihood defendant would have sold the benefited land and the new owners may have objected to that portion of the assessment attributable to the unauthorized payments. Even if the security interest received by the City was equal in value to the money taken by defendant, however, the fact that defendant exchanged property for that which he obtained does not negate any element of the theft. *See* Perkins, Criminal Law 269 (2nd ed 1969). A theft is no less a theft and the thief is no less a thief because he gives his unknowing victim a mortgage.

Nor does the fact that defendant assumed an obligation to repay in the future preclude a finding of the requisite intent to permanently appropriate or deprive. *See* Perkins, Criminal Law 312 (2nd ed 1969). A defendant's actual return of the property after it is obtained may shed some light on his intent at the time of the taking, *see People v. Braver,* 229 Cal App 2d 303, 40 Cal Rptr 142, 10 ALR3d 565 (1964); *State v. Mason,* 62 Mont 180, 204 P 358 (1922); *but see State v. Walls,* 6 Wash App 34, 492 P2d 236 (1971), *aff'd* 81 Wash 2d 618, 503 P2d 1068 (1972), but a defendant's restitution, repayment or promise to repay is totally irrele-

---

"(b) Dispose of the property in such manner or under such circumstances as to render it unlikely that an owner will recover such property.

"* * * * *."

vant. *See* Anno., *False Pretenses - Payments to Victim* § 2, 10 ALR3d 572. There is a distinction between taking property with the intent to return it and taking property with the intent to make restitution or repayment. In the former situation the individual intends to restore the specific property taken to its owner and therefore there can be no intent to permanently deprive. In the latter case the individual intends to pay to the owner the value of the property taken but not the property itself. Theft involves the taking of a specific thing and not the taking of an abstraction such as value. Perkins, Criminal Law 270 (2nd ed 1969). Thus, the intent to restore value to the owner while keeping the specific property taken does not preclude a theft conviction. We hold, therefore, that the trial court properly denied defendant's motion for judgment of acquittal.

## III

■ Finally, defendant contends that the trial court erred in sustaining the state's objections to four exhibits which defendant sought to introduce. These exhibits show that, subsequent to the digging of the test pits, defendant recognized that the Lynnewood subdivision was insufficient to bear the total cost of improvements and therefore he annexed additional land and permitted it to be assessed as benefited property. The trial court ruled that these documents were irrelevant. Defendant contends that they show that he continued his efforts to make the project successful after the alleged misappropriation of funds and that he intended that all charges would be made against his property.

As noted above, the fact that defendant intended that the City be reimbursed for money which he fraudulently obtained has no bearing on the issue of his intent with respect to the specific property taken. Therefore, the proffered evidence was irrelevant and the trial court's exclusion of it was proper.

Reversed and remanded for new trial.