146 November 26, 2025 No. 1007

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KELSEY JEAN CULVER,
*Defendant-Appellant.*

Coos County Circuit Court
22CR13869; A179973

Martin E. Stone, Judge.

Submitted September 27, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.*

ORTEGA, P. J.

Affirmed.

_____

* Lagesen, C.J., *vice* Mooney, S.J.

**ORTEGA, P. J.**

After defendant ran over K with her car, killing him, a jury found her guilty of first-degree manslaughter, ORS 163.118(1)(a), and failure to perform duties of a driver to seriously injured persons, ORS 811.705(3)(b). On appeal, defendant claims that the trial court erred by: (1) admitting a recorded jail phone call as evidence of her consciousness of guilt, (2) excluding an eyewitness's lay opinion testimony that defendant did not intentionally run over K, (3) denying defendant's motion for judgment of acquittal for first-degree manslaughter, because no reasonable factfinder could find that she acted with extreme indifference to the value of human life, and (4) overruling her vouching objection to the state's rebuttal closing argument regarding a different eyewitness's credibility.

We conclude that the trial court did not err because (1) the recorded jail phone call was relevant to show defendant's consciousness of guilt and its relevance did not rely on character or propensity reasoning, (2) the eyewitness's lay opinion testimony would not have been helpful to the jury, (3) a reasonable factfinder could find that defendant's conduct demonstrated extreme indifference to the value of human life, and (4) the prosecutor's credibility argument was based on the witness's demeanor and testimony and did not constitute vouching. We therefore affirm.

We briefly set forth the facts relevant to the parties' arguments on appeal, and we provide additional facts necessary to our disposition in our analysis of each assignment of error. Defendant and K were sitting in defendant's car in a mall parking lot, arguing. Defendant hit K in the face and, when he got out of the car and walked away, defendant followed him in the car. According to one eyewitness who videorecorded the incident, defendant "nudged" K with the car's front bumper; according to another eyewitness, she tried to "pin" him between her car and another car. While K was standing outside next to the passenger side of defendant's car, she "gassed it" while turning right into K, dragging him under her car and running over him with both the front and rear passenger wheels. Defendant stopped, got out, screamed for K, and held him briefly before getting back

in her car and exiting the mall parking lot at a high rate of speed. Defendant side-swiped a car without stopping and was arrested after she crashed her car at a nearby motel a short time later.

The state charged defendant with second-degree murder, and a jury convicted her of the lesser-included offense of first-degree manslaughter.[1] This appeal followed.

## JAIL CALL

Before trial, the court granted the state's motion to admit a recorded jail phone call between defendant and Hernandez as evidence of defendant's consciousness of guilt. In the call, defendant urged Hernandez to tell defendant's brother that Mather, K's friend and an eyewitness to the incident, was going to testify against her and said that her brother would "stop it." On appeal, defendant argues that the call was not relevant to her consciousness of guilt because it required speculation to infer from her intent to stop Mather from testifying that she had a guilty state of mind with respect to the charged crimes. We disagree.

"Generally, acts which are intended to obstruct justice or avoid punishment are relevant to prove consciousness of guilt." *State v. Kelley*, 29 Or App 321, 326, 563 P2d 749, *rev den*, 279 Or 301 (1977) (citing *McCormick on Evidence* 451, § 190 (2d ed 1972)). Although a defendant's guilty state of mind specific to a charged crime is not the only reasonable inference that a factfinder may draw from evidence that the defendant attempted to avoid prosecution for that crime, it is still one reasonable inference. *Cf. State v. Guillen*, 344 Or App 546, 561, ___ P3d ___ (2025) (Hellman, J., dissenting) (observing that evidence of a defendant's flight may prove consciousness of guilt but also "can reflect many considerations, including fear and distrust of law enforcement based on personal experience or community knowledge, *** a fear of false accusations that could lead to legal consequences, *** or any number of reasons based on a person's lived experience").

---

[1] As noted, the jury also found defendant guilty of failure to perform duties of a driver to seriously injured persons, but she does not challenge that conviction on appeal.

Alternatively, defendant contends that the trial court erred in admitting the evidence after OEC 403 balancing. In defendant's view, the evidence was minimally probative of her guilt and unduly prejudicial because it had the capacity to lure the factfinder into finding her guilty on grounds different from proof specific to the charged crimes. Because defendant's statements in the jail phone call do not rely on character or propensity-based reasoning for their relevancy, the risk of unfair prejudice was not so great that the trial court was required to exclude the evidence after OEC 403 balancing. *See, e.g.*, *State v. Webb*, 342 Or App 426, 441-42, 576 P3d 995, *adh'd to as modified on recons*, 344 Or App 365, ___ P3d ___ (2025) (the trial court did not abuse its discretion in admitting subsequent misconduct evidence that was relevant without relying on character or propensity inferences); *State v. Sanders*, 342 Or App 414, 417, 576 P3d 1046 (2025) (same); *cf. Wagner v. State*, 213 Md App 419, 465, 74 A3d 765 (2013) (explaining that a defendant's conduct showing a desire to evade prosecution or conceal evidence shows consciousness of guilt, from which a factfinder can infer consciousness of guilt with respect to the charged offenses and, ultimately, actual guilt). We therefore reject defendant's first assignment of error.

## LAY OPINION TESTIMONY

Before trial, the court granted the state's motion *in limine* to exclude Mather's statement at the scene opining that defendant had not intended to run over K, concluding that it would not be helpful to the jury because Mather did not have any special insight into defendant's mental state. On appeal, defendant contends that that ruling was erroneous. In defendant's view, Mather's lay opinion would have been helpful to the jury because he was using the word "intentional" in its common usage rather than as a legal term of art. The state responds that Mather's lay opinion would not have been helpful to the jury because defendant's conduct of driving her car into and over K was witnessed by several people and captured on video, so the jury was readily able to assess the same information as Mather and come to its own conclusion. The state also argues that any error in excluding Mather's lay opinion was harmless for

the same reasons that it would not have been helpful to the jury, and because the court allowed Mather to testify about defendant's conduct and the surrounding circumstances.

We agree with the state. OEC 701 provides that lay opinion testimony "is limited to those opinions or inferences which are: (1) [r]ationally based on the perception of the witness; and (2) [h]elpful to a clear understanding of testimony of the witness or the determination of a fact in issue." Accordingly, while a witness may testify to their objective perception of the events in question, a lay witness may not testify to a fact when they are "not better able than the jury to reach a conclusion on that issue." *State v. Parks*, 71 Or App 630, 635, 693 P2d 657 (1985). And opining as to whether a defendant acted "intentionally" is not admissible under OEC 701 because it constitutes testimony about "a question of law as well as a question of fact" about a "statutorily defined legal term[] whose meaning[] may or may not coincide with the meaning[] that a * * * lay person otherwise would give them." *State v. Wille*, 317 Or 487, 500-01, 858 P2d 128 (1993) (footnote omitted).

Here, the trial court did not err in excluding Mather's lay opinion testimony that defendant did not intend to run over K because it would not have been helpful to the jury. Mather had no unique insight into defendant's mental state or whether defendant's conduct was "intentional" under ORS 161.085(7). Even if Mather opined only as to his lay understanding of whether defendant's conduct was intentional, the jury could readily assess defendant's conduct based on eyewitness testimony about the factual circumstances and viewing the video of the incident. We therefore reject defendant's second assignment of error.

## MJOA

At the close of the state's evidence, defendant moved for judgment of acquittal on second-degree murder on the grounds that there was insufficient evidence that she intended to kill K. The trial court denied the motion and also ruled that there was sufficient evidence for the lesser-included offense of first-degree manslaughter to go to the jury.

On appeal, defendant contends that the trial court erred in denying her MJOA on first-degree manslaughter, of which the jury ultimately found her guilty, because there is insufficient evidence that she acted under circumstances manifesting extreme indifference to the value of human life. Defendant contends that her conduct during and after the collision did not indicate a disregard for the welfare of others as a matter of law because the video shows that she braked after she hit K and tried to stop before K was pulled completely underneath her car, and because she demonstrated concern for K afterwards. The state responds that defendant demonstrated extreme indifference by driving directly into K while accelerating, which is particularly dangerous conduct that is distinct from mere recklessness. Again, we agree with the state.

Conduct manifesting extreme indifference to the value of human life is an essential element of the crime of first-degree manslaughter. ORS 163.118(1)(a). We review the sufficiency of the evidence by "examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential element of the crime beyond a reasonable doubt." *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).

"[E]xtreme indifference to the value of human life means a state of mind where an individual cares little about the risk of death of a human being." *State v. Cook*, 163 Or App 578, 583, 989 P2d 474 (1999) (internal quotation marks omitted). "[I]t describes a level of recklessness that is characterized by a willingness to commit an extremely dangerous act and an indifference as to whether that act could cause the death of another human being." *State v. Ruiz*, 333 Or App 565, 566, 553 P3d 60, *rev den*, 373 Or 121 (2024) (internal quotation marks omitted). To determine whether a defendant's conduct manifests recklessness with extreme indifference, we consider "circumstances surrounding the conduct that inform the nature of the risk to human life involved and the extent to which a defendant consciously disregarded that risk," "including the circumstances before,

during, and after the resulting injury or death." *State v. Giron-Cortez*, 372 Or 729, 741-42, 557 P3d 505 (2024) (internal quotation marks omitted).

Having reviewed the record in the light most favorable to the state, we conclude that it contains legally sufficient evidence for the jury to determine that defendant's conduct manifested an extreme indifference to the value of human life. Here, defendant followed K in her car as he walked through a parking lot and "nudged" him in an attempt to "pin" him between her car and another. Defendant then turned her car directly into K as she accelerated quickly, pulling K underneath her car, and running over him with both passenger wheels. After the crash, although defendant briefly stopped and expressed concern for K, she did not call 9-1-1 or ask a bystander to do so, and she quickly fled the scene, driving erratically and at a high rate of speed, crashing into another car without stopping, and crashing again at a nearby motel.

Considering defendant's conduct leading up to, during, and directly after the crash, we conclude that the evidence was sufficient for the jury to determine that defendant's conduct manifested a willingness to commit an extremely dangerous act and an indifference as to whether that act could cause K's death. *See State v. Belcher*, 124 Or App 30, 33, 860 P2d 903 (1993), *rev den*, 318 Or 351 (1994) ("The phrase 'extreme indifference' describes a heightened degree of blameworthiness in the circumstances of [the] defendant's conduct; it 'does not create an additional culpable mental state.'" (Quoting *State v. Boone*, 294 Or 630, 634, 661 P2d 917 (1983).)). Accordingly, we reject defendant's third assignment of error.

## CLOSING ARGUMENT

In closing argument, defense counsel argued that the eyewitness's testimony that defendant "nudged" K with her car before the incident was not credible because she did not report that information to police at the scene. In rebuttal closing argument, the prosecutor argued that the eyewitness was credible, and defendant objected to vouching when the prosecutor concluded, "And frankly, ladies and

gentlemen, based on the way she testified she did tell you the truth." The court overruled the objection.

On appeal, defendant renews her contention that the prosecutor's argument constituted impermissible vouching for the eyewitness's credibility. In defendant's view, the prosecutor offered his personal assessment of her credibility. We disagree.

At trial, lawyers are "prohibited from giving their personal opinions on the credibility of witnesses." *State v. Sperou*, 365 Or 121, 129, 442 P3d 581 (2019). However, "[a] prosecutor is not categorically prohibited from referring to the credibility of a witness." *State v. Kiesau*, 314 Or App 327, 329, 496 P3d 1151 (2021). Indeed, "counsel may argue that the *jury* should regard a witness as credible (or not) based on, for instance, the witness's demeanor and testimony." *Sperou*, 365 Or at 135 (emphasis in original).

Here, the prosecutor's argument that, "based on the way she testified she did tell you the truth" was not impermissible vouching. The prosecutor did not suggest that he had independent knowledge of the witness's credibility, or that he personally found her to be credible. Instead, he argued that the jury should regard her as credible based on her demeanor and testimony. The trial court did not err in overruling defendant's vouching objection. Accordingly, we reject defendant's fourth assignment of error.

Affirmed.